IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Tonnie Nathaniel Baldwin, II,
*Tonnie Baldwin*,                                    )    C/A No. 8:14-cv-03726-DCN-JDA
                                                     )
        Petitioner,                                  )
                                                     )
            v.                                       )    **REPORT AND RECOMMENDATION**
                                                     )    **OF MAGISTRATE JUDGE**
Warden Leroy Cartledge,                              )
                                                     )
        Respondent.                                  )
_____ )

        This matter is before the Court on Respondent's motion for summary judgment.

[Doc. 18.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28

U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule

73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for

relief and submit findings and recommendations to the District Court.

        Petitioner filed this Petition for writ of habeas corpus on September 15, 2014.[1]  [Doc.

1.]  On January 14, 2015, Respondent filed a motion for summary judgment and a return

and memorandum to the Petition.  [Docs. 17, 18.]  On January 15, 2015, the Court filed an

Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner

of the summary judgment procedure and of the possible consequences if he failed to

adequately respond to the motion.  [Doc. 19.]  On March 27, 2015, Petitioner filed a

response in opposition to the motion for summary judgment.  [Doc. 27.]  Respondent filed

a reply on April 9, 2015.  [Doc. 31.]  On April 6, 2015, the Court directed Respondent to

_____

        [1]A prisoner's pleading is considered filed at the moment it is delivered to prison
authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).
Accordingly, this action was filed on September 15, 2014.  [Doc. 1-1 (enveloped stamped
as received by the prison mailroom on September 15, 2014).]

supplement the record with file-stamped copies of the remittitur(s) in Petitioner's direct and PCR appeal(s) so that this Court could adequately consider Respondent's statute of limitations defense. [Doc. 29.] Respondent supplemented the record on April 21, 2015. [Doc. 32.] On May 5, 2015, Petitioner filed a supplement to his response in opposition to the motion for summary judgment [Doc. 37], and on May 21, 2015, Petitioner filed an additional response in opposition to the motion for summary judgment [Doc. 38].

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined in the South Carolina Department of Corrections at McCormick Correctional Institution pursuant to orders of commitment of the Aiken County Clerk of Court. [Doc. 1.] In February 2001, Petitioner was indicted for armed robbery and burglary in the first degree (the "First Set of Convictions").[2] [Doc. 17-4.] On March 19, 2001, represented by David Mauldin ("Mauldin"), Petitioner proceeded to trial. [App. 1–276.[3]] On March 21, 2001, Petitioner was found guilty of armed robbery and first degree burglary. [App. 268.] Petitioner was sentenced to 20 years for the armed robbery charge and 20 years for the first degree burglary charge, to run concurrent. [App. 276.]

---

[2]It appears from the record that Petitioner was also indicted for criminal sexual conduct, first degree but that the charge was nolle prossed on March 21, 2001. [Docs. 17 at 2; 17-29.]

[3]The Appendix can be found at Docket Entry Numbers 17-1 through 17-3.

In May 2001 Petitioner was indicted for armed robbery, grand larceny, and possession of a firearm or knife during the commission of or attempt to commit a violent crime (the "Second Set of Convictions"). [Doc. 17-4.] On November 12, 2001, represented by Mauldin, Petitioner proceeded to trial. [App. 280–603.] On November 13, 2001, Petitioner was found guilty of all charges [App. 598] and sentenced to life for the armed robbery charge, ten years for the grand larceny charge, and five years for the possession of a firearm or knife during the commission of or attempt to commit a violent crime charge, to run concurrent. [App. 602–03.]

**Direct Appeal**

### *The First Set of Convictions*

Aileen P. Clare ("Clare"), Appellate Defender with the South Carolina Commission on Indigent Defense, filed an *Anders*[4] brief on Petitioner's behalf in the South Carolina Court of Appeals, dated September 5, 2002, raising the following issue:

> Did the trial court err by denying appellant's motion for mistrial after the solicitor made improper, prejudicial comments in summation?

[App. 605–13.] At the same time she filed the *Anders* brief, Clare submitted a petition to be relieved as counsel. [App. 611–12.] Petitioner filed a pro se brief, received by the South Carolina Court of Appeals on October 17, 2002, raising the following issues, quoted substantially verbatim:

### 1. THE CONFESSION

---

[4]A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

At trial the state introduced the Appellant's alleged voluntary confession into evidence over the defense counsel's objection regarding its voluntariness. The court held that the appellant's confession was freely and voluntarily given. The appellant demonstrates that the trial court erred in failing to grant defense motion to exclude the involuntary confession violating the appellant's Fifth Amendment right.

\*\*\*

## 2. CONTINUANCE

\*\*\*

At trial, defense counsel motioned the court for continuance based on the issue that, appellant had recently received several letters from material witnesses regarding the crime charged. The trial court contended that since appellant had the letters prior to trial, he could have provided them earlier. The court has held that, "where there is showing that any other evidence on behalf of appellant can be produced, denial of continuance is an abuse of discretion.["] The appellant possessed letters from potential material witnesses regarding the crime charged. Counsel was not permitted to investigate the adequacy and importance of these witnesses as a denial of such deprives the appellant of his constitutional right to a fair trial, and to call witnesses on his behalf.

The appellant alleges that those letters would provide information from material witnesses who could have impeached State witnesses. Several facts regarding the reliability and credibility of the State witnesses existed, the courts failure to grant continuance for this purpose constitutes a[] clear abuse of discretion. The appellant made a showing of the existence of evidence relevant to issues and preparations to his defense at trial.

## 3. VENUE

During the appellant's trial he suffered extreme prejudice by pretrial publicity. Although the party moving for change of venue bears the burden of showing actual juror prejudice as a result of publicity. The appellant contends that, the publicity surrounding his trial tainted the fairness of the criminal trial process. Despite jurors voir dire regarding their

4

impartiality, the appellant at that time stood accused of several murders, armed robberies, and kidnappings. (See attachment(s)). These media accusations only demonstrated that the accused possessed the propensity to commit crimes, through the alleged accusations of prior bad acts and character.

The appellant contends that the trial court abused its discretion by failing to grant change of venue. The defendant enjoys the right to a fair and impartial trial under the Due Process Clause of the Fourteenth Amendment.

**4. DIRECTED VERDICT**

The appellant contends that the trial court made error by failing to grant motion for directed verdict for armed robbery and first degree burglary. Although the court reviews refusal to grant directed verdict in light most favorable to the State the appellant demonstrates that the court erred in failing to grant such.

\*\*\*

[Doc. 17-7 (emphases in original) (citations omitted).] On June 24, 2003, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted counsel's motion to be relieved. [App. 614–15.] Remittitur was issued on July 28, 2003. [Doc. 17-8.]

### *The Second Set of Convictions*

Clare filed an *Anders*[5] brief on Petitioner's behalf in the South Carolina Court of Appeals, also dated September 5, 2002, raising the following issue:

Did appellant's convictions for larceny and armed robbery violate his privilege against double jeopardy?

[App. 616–25.] At the same time she filed the *Anders* brief, Clare submitted a petition to be relieved as counsel. [App. 624–25.] Petitioner did not file a pro se brief.

_____

[5]See an explanation of an *Anders* brief, supra.

5

On June 17, 2003, the South Carolina Court of Appeals dismissed Petitioner's appeal and granted counsel's motion to be relieved.  [App. 627–28.]  Remittitur was issued on July 21, 2003.  [Doc. 17-11.]

**PCR Proceedings**

### *First and Second PCR Applications*

Petitioner, proceeding pro se, filed his first application for post-conviction relief ("PCR"), challenging both sets of convictions, on April 15, 2004.  [App. 629–48.]  Petitioner alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

    (a)    See Attachments

    (b)    "      "

    (c)    "      "

[App. 630.]  In support of his grounds for relief, Petitioner provided the following facts, quoted substantially verbatim:

    (a)    See Attachments

    (b)    "      "

    (c)    "      "

[*Id.*]  In his attachment in support of his grounds for relief, Petitioner provided the following, quoted substantially verbatim:

    Ineffective Assistance of Trial Counsel

    establish accomplice liability liability for Robbery, there is no meeting of the minds of each alleged perp[e]trator  to establish such.  The court held in <u>Gunn</u>, "what is needed is proof <u>they</u> intended to act together for their shared mutual benefit.["]  The applicant is allegedly having stated that he went to the hotel

6

room to rob someone for money or drugs, upon allegedly not finding such, the suspects fled [without their intended object]. Even if found guilty, at most the applicant's through and by his alleged bad acts, only committed attempted Armed Robbery. As Muse for his own benefit and purpose went back into the motel room after they fled to steal two pair of boots. While the applicant had already fled the scene, he shared no mutual benefit from Muse's return to the motel room to commit a crime therein, and was there [e]ntitled to direct[ed] verdict of the charges.

Ineffective Assistance of Counsel

a.    -Trial Counsel failed to adequately participate in applicant's defense.

b.    -Trial Counsel failed to obtain a crime scene expert to educate the jury and examine the crime scene to support applicant's defense to the crime charged.

c.    -Trial counsel failed to object to the admission of an illegally obtained statement given by applicant in violation of his <u>Miranda v. Arizona</u> rights.  [Applicant was under the influence of drugs and alcohol when interrogated].

d.    -Trial counsel failed to subpoena alibi witness in applicant's defense.

e.    -Trial Counsel failed to disclose any information regarding discovery material to permit applicant to participate in his own defense.

f.    -Trial Counsel failed to request a <u>Jackson v.Deno</u> hearing to contest the admissibility of the statements offered against applicant for trial.

g.    -Trial Counsel failed to push the issue due to a Motion to Dismiss for an order dismissing the foregoing indictments pursu[]ant to violation of order of the Honorable Chief Justice Earnest P. Finney, JA, dated March 5, 1999 mandating that all criminal case in the state of South Carolina be dispose[d] of within 180 days from the date of arrest.

h.   The Applicant alleges each and every allegation incorporated above as the complete denial of due process guaranteed him under the South Carolina Constitution and the Sixth Amendment to the United State Constitution.

I.   Applicant's convictions for Larceny and Armed Robbery violated his privilege against double Jeopardy.

The state alleged that applicant robbed Norman Coleman outside of an Aiken County convenient store during the early morning of September 20, 2000. Mr. Coleman testified that he stopped at the store to buy a newspaper. He got out of his car but left it running. As he was walking towards the news[s]tand, an armed man accosted him and demanded his money. Mr. Coleman testified that he gave the man all of the money in his wallet. The man then fled in Mr. Coleman's car, which was idling nearby.

Applicant was separately indicted for the armed robbery of Mr. Coleman's money and the larceny of Mr. Coleman's car. He objected on the basis that the acts were a single course of conduct, so separate indictments violated the double jeopardy clause. The court overruled the motion. This ruling was error.

***

In applicant's case, the state alleged that two separate pieces of property were stolen by a single act. Since the legislature has not expressed an intent to impose additional punishment for each piece of property taken during a single robbery, applicant's convictions for both larceny and armed robbery violate his constitutional privilege against double jeopardy. He should receive a new trial on a single indictment.

j.   The trial court erred by denying applicant's motion for a mistrial, after the solicitor made improper, prejudicial comments in summation.

Applicant did not testify on his own behalf or offer any evidence at trial. In his closing argument, the solicitor made the following comments[:]

8

Quite honestly, I don't know what the defense is in this case. I want to take you through the portions of the case that I think are probably the most crucial, but you know, honestly, I don't really feel that I need to be standing up here . . . .  Now, I don't know what the defense is looking for here.  A pardon?  A birthday pass?  I don't know.  But it doesn't make sense to me with all the evidence that's been presented to you, except for the fact that everybody has a right to a jury trial.

Applicant objected and moved for a mistrial.  The court denied his motion.  This ruling was error.

*** 

The solicitor's comments directly referred to applicant's right to demand a jury trial and his right to remain silent.  The comments prejudiced applicant's defense and rendered his trial unfair.  The lower court should have ordered a mistrial.

Venue

k.        During the applicant's trial he suffered extreme prejudice by pretrial publicity.  Although the party moving for change of venue bears the burden of showing actual juror prejudice as a result to publicity. The applicant contends that, the publicity surrounding his trial tainted the fairness of the criminal trial process. Despite jurors voir dire regarding their impartiality, the appellant at that time stood accused of several murders, and armed robberies.  These media accusations only demonstrated that the accused possessed the propensity to commit crimes, through the alleged accusations of prior bad acts and character.  The applicant contends that the trial court abused its discretion by failing to grant change of venue.  The defendant enjoys the right to a fair and impartial trial under the Due Process Clause of the Fourteenth Amendment.

l.        Directed Verdict

The applicant contends that the trial court made error by failing to grant motion for directed verdict for armed robbery and first degree burglary. Although the court reviews refusal to grant directed verdict in light most favorable to the State the applicant demonstrates that the court erred in failing to grant much.

\*\*\*

[Supporting Facts:]

This issue is tie[d] in with Ineffect[ive] trial Counsel and appellate Cou[nsel.]

At trial the state introduced the applicant's alleged voluntary confession into evidence over the denfense's objection regarding its involuntariness. The Court held the applicant's confession was freely and voluntarily given. The applicant's demonstrates that the trial court erred in failing to grant defense motion to exclude the involuntary confession violating applicant's Fifth Amendment rights.

\*\*\*

Therefore for the above stated reasons the trial court erred in failing to suppress applicant's statement.

[App. 635–46 (some alterations in original) (emphasis in original) (citations omitted).]

Petitioner, proceeding pro se, filed a second PCR application, challenging both sets of convictions, on April 18, 2005. [App. 649–54.] Petitioner alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

(a)    Ineffective Assistance of Trial Counsel

(b)    See Attachments

[App. 651.] In support of his grounds for relief, Petitioner provided the following facts, quoted substantially verbatim:

(a)    See Attachments

10

[*Id.*] In his attachment in support of his grounds for relief, Petitioner provided the following, quoted substantially verbatim:

Ineffective Assistance of Trial Counsel-

a.)    failed to adequately participate in applicant's defense

b.)    failed to obtain a crime scene expert to educate the jury and examine the crime scene to support applicant's defense to the crime charged.

c.)    -failed to object to the admission of an illegally obtained statement given by applicant in violation of his <u>Miranda v. Arizona</u> rights. [Applicant was under the influence of drugs and alcohol when interrogated].

d.)    -failed to subpoena alibi witness in applicant's defense.

e.)    -failed to disclose any information regarding discovery material to permit applicant to participate in his own defense.

f.)    -failed to request a <u>Jackson v. Deno</u> hearing to contest the admissibility of the statements offered against applicant for trial.

g.)    -failed to push the issue due to a Motion to Dismiss for an order dismissing the foregoing indictments pursu[]ant to violation of order of the Honorable Chief Justice Earnest P. Finney, JA, dated March 5, 1999 mandating that all criminal case in the state of South Carolina be dispose[d] of within 180 days from the date of arrest.

h.)    The applicant alleges each and every allegation incorporated above as the complete d[e]ni[a]l of due process guaranteed him under the South Carolina Constitution and the Sixth Amendment to the United State Constitution.

[App. 658 (some alterations in original).] The State filed a return, dated June 9, 2005.

[App. 659–63.] The two actions were merged pursuant to an order filed August 17, 2005.

[Doc. 17-13.]

An evidentiary hearing was held on August 15, 2005, at which Petitioner was represented by Thomas F. Allgood ("Allgood").[6]  By letter dated March 29, 2006, Petitioner requested that the PCR court not sign the proposed order dismissing Petitioner's PCR application in light of the South Carolina Court of Appeals ruling in *James v. State*, 628 S.E.2d 892 (S.C. Ct. App. 2006), *rev'd*, 641 S.E.2d 899 (S.C. 2007).  [Doc. 17-14.] Petitioner requested a hearing, and a second evidentiary hearing was held on August 8, 2006, at which Petitioner was represented by Allgood.  [App. 665–78.]  On September 14, 2009, the PCR court filed an order of dismissal, denying and dismissing the applications with prejudice.  [App. 680–89.]

### Third PCR Application

Petitioner, proceeding pro se, filed his third PCR application on September 9, 2010.[7] [App. 691–97.]  Petitioner alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

(a)     Ineffective assistance of P.C.R. counsel

[App. 693.]  In support of his grounds for relief, Petitioner provided the following facts, quoted substantially verbatim:

(a)     Counsel failed to appeal my P.C.R. as I requested him to

[*Id.*]  The State filed a return, dated December 22, 2010.  [Doc. 17-18.]

---

[6]It appears that the first hearing transcript was not made a part of the record; however, it is referenced in the PCR court's order of dismissal [App. 680] and in Petitioner's petition for order to reconstruct the record of Petitioner's PCR hearing [App. 709–12]. Moreover, the content of the hearing is not dispositive in this case.

[7]On the copy of Petitioner's third PCR application before the Court, the filing date stamp is illegible.  [*See.* App. 691.]  Accordingly, the Court will rely on the filing date used by the PCR court.  [*See* App. 702.]

An evidentiary hearing was held on January 31, 2011, at which Petitioner was represented by Sidney J. Jones. [App. 698-701.] On March 24, 2011, the PCR court filed an order granting a belated appeal pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991).[8] [App. 702-7.] The PCR court stated:

> In the Applicant's current PCR application, he argues that Allgood failed to file a timely notice of appeal from the order denying post-conviction relief dated September 8, 2009, and filed September 14, 2009. Allgood asserts that the failure to file the appeal was an oversight and does not contest that Applicant desired to appeal. Based on Allgood's representations, the Applicant and Respondent consent to the belated review. I therefore find that the Applicant did not knowingly and voluntarily waive his right to appellate review and is therefore entitled to a belated review of the denial of his first PCR application. Whitehead v. State, 352 S.C. 215, 574 S.E.2d 200 (2002). The Applicant's denial of an appeal can be remedied by a petition for belated review by his current PCR

---

[8]As the South Carolina Supreme Court has explained,

> This Court has allowed successive PCR applications where the applicant has been denied complete access to the appellate process. Under the PCR rules, an applicant is entitled to a full adjudication on the merits of the original petition, or "one bite at the apple." This "bite" includes an applicant's right to appeal the denial of a PCR application, and the right to assistance of counsel in that appeal.

> An *Austin* appeal is used when an applicant is prevented from seeking appellate review of a denial of his or her PCR application, such as when an attorney fails to seek timely review.

> * * *

> *Austin* appeals are considered "belated appeals" and are used to rectify unjust procedural defects, such as when an attorney does not file a timely appeal.

*Odom v. State*, 523 S.E.2d 753, 757 (S.C. 1999) (citations and footnote omitted).

>       attorney pursuant to Austin v. State, 305 S.C. 453, 409 S.E.2d
>       395 (1991) with regard to C.A. No. 2004-CP-02-0546.

[App. 704.]  The PCR court also found Petitioner's third PCR application was barred as successive and untimely and denied and dismissed the third PCR application with prejudice.  [App. 705–06.]

A notice of appeal was timely filed, and Susan B. Hackett ("Hackett") of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a petition for writ of certiorari in the Supreme Court of South Carolina, dated December 27, 2012.  [Doc. 17-20.] The Petition asserted the following as the sole issue presented:

>       Did the PCR court properly grant Petitioner a belated PCR
>       appeal pursuant to Austin v. State, 305 S.C. 453, 409 S.E.2d
>       395 (1991) where Petitioner did not knowingly and intelligently
>       waive the right to appellate review of his previous PCR
>       application and Order of Dismissal?

[*Id.* at 3.][9]  Petitioner, represented by Hackett, also filed a petition for writ of certiorari pursuant to *Austin v. State*, dated December 27, 2012.  [Doc. 17-21.] The petition asserted the following issues:

>       I.    The lower court erred in concluding Petitioner's
>             post-conviction relief hearing was reconstructed where
>             the court failed to apply the appropriate standard, or any
>             standard at all, in making its determination and where
>             the record as reconstructed prevents meaningful
>             appellate review.
>
>       II.   In the event this Court determines the record has been
>             reconstructed to permit meaningful review, the limited

---

[9]Petitioner, represented by Hackett, filed a petition for order to reconstruct the record of Petitioner's PCR hearing, dated April 17, 2012.  [App. 709–13.]  By order dated June 18, 2012, the Supreme Court of South Carolina remanded the matter back to the lower court to reconstruct the record.  [App. 715–16.]  A reconstruction hearing was held on August 16, 2012, at which Petitioner was represented by Hackett.  [App. 717–70.]

14

record available demonstrates the PCR judge erred in denying Petitioner relief from his convictions and sentences where trial counsel provided ineffective assistance by failing to investigate and present a favorable witness to counter the prosecution's theory of the case.

III.   In the event this Court determines the record has been reconstructed to prevent meaningful review, the limited record available demonstrates the PCR judge erred in denying Petitioner relief from his convictions and sentences where trial counsel provided ineffective assistance by failing to acquire video evidence from a local store where the armed robbery allegedly occurred.

[*Id.* at 3.]  The Supreme Court of South Carolina transferred Petitioner's PCR appeal to the South Carolina Court of Appeals [Doc. 17-24], which granted the petition for writ if certiorari from the PCR court's second order and denied the petition for writ of certiorari from the PCR court's first order pursuant to *Austin,* 409 S.E.2d 395.  [Doc. 17-25.]  The South Carolina Court of Appeals remitted the matter to the lower court on August 13, 2014.  [Doc. 17-26.]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on September 15, 2014.  [Doc. 1.]  Petitioner raises the following grounds for relief, quoted substantially verbatim, in his Petition pursuant to 28 U.S.C. § 2254:

**GROUND ONE:**     [Left Blank]

*Supporting facts*:     See Attached Sheet

**GROUND TWO:**     I.A.C.

*Supporting facts*:     [Left Blank]

15

[*Id.* at 17, 27.]  In his attachment to the Petition, Petitioner provides the following, quoted

substantially verbatim:

### Ground One Argument (A)

Supporting Fact

My convictions for Larceny and Armed Robbery violated my privilege against double Jeopardy

(Case#2) The state alleged that I robbed Norman Coleman outside of an Aiken County convenience store during the early morning of September 20, 2000.  Mr. Coleman testified that he stopped at the store to buy a newspaper.  He got out of his car but left it running.  As he was walking towards the newsstand, an armed man accosted him and demanded his money.  Mr. Coleman testified that he gave the man all of the money in his wallet.  The man then fled in Mr. Coleman's car, which was idling nearby.

I was separately indicted for the armed robbery of Mr. Coleman's money and the larceny of Mr. Coleman's car.  I objected on the basis that the acts were a single course of conduct, so separate indictments violated the double jeopardy clause.  The court overruled the motion.  This ruling was error.

***

In my case, the state alleged that two separate pieces of property were stolen by a single act.  Since the legislature has not expressed an intent to impose additional punishment for each piece of property taken during a single robbery, my convictions for both larceny and armed robbery violate my constitutional privilege against double jeopardy.  I should receive a new trial on a single indictment.

### Ground One Argument (B)

Supporting fact

Venue - Case # 1

During my trial I suffered extreme prejudice by pretrial publicity.  Although the party moving for change of venue bears

16

the burden of showing actual jurors prejudice as a result to publicity.  I contend[] that, the publicity surrounding my trial tainted the fairness of the criminal trial process.  Despite jurors voirdire regarding their impartiality, that at the time I  stood accused of several murders, and armed robberies.  The media accusations only demonstrated that the accused possessed the propensity to commit crimes, through the alleged accusations of prior bad acts and character.  I contend that the trial court abused its discretion by failing to grant change of venue.  I enjoy the right to a fair and impartial under the Due Process Clause of the Fourteenth Amendment.

(Directed Verdict)    ARGUMENT (C)

I contend[] that the trial court made error by failing to grant motion for directed verdict for Armed Robbery and First degree burglary.  Although the court reviews refusal to grant directed verdict in light most favorable to the State I demonstrate[] that the court erred in failing to grant much.

*** 

The state has not met it's burden of proof to establish that I am guilty of Armed Robbery.  At trial the state relied upon testimony of (co-defendant) Gehazel Muse to establish proof of armed Robbery.  Muse testified that I was allegedly inside the motel room.  Muse further testified that the alleged scheme was to "rob" someone for money, not property.  I was indicted for feloniously taking two pairs of boots and an identification card from the victims.  The state instructed the jury during opening summations that they [the jury] would be required to find guilt as to the indictments.  However, there is no ample evidence to find guilt of such.  I do not dispute that the accomplice liability doctrine permit[s] a finding if one commits a crime, the hand of one is the hands of all.  Muse testified unequivocally that he took two pairs of boots from the motel room.   There is no agreement established within Muse's testimony showing that I allegedly armed robbed the victims for the boots or property.  Muse stated that the reason he grabbed the boots was because he didn't want anyone to chase him and that he was nervous. There must be a common scheme or plan to establish accomplice liability for robbery there is no meeting of the minds of each alleged perp[e]trator to establish such.  The court held in <u>Gunn</u>, "what is needed is proof <u>they</u> intended to act together for their shared mutual benefit.["]  I

allegedly have stated that I went to the motel room to rob someone for money or drug[s], upon allegedly not finding such, the suspects fled [without their in tended object]. Even if found guilty, at the most I only committed attempted Armed Robbery. As Muse for his own benefit and purpose went back into the motel room after they fled to steal two pair of boots. While then I had already fled the scene, I shared no mutual benefit from Muse's return to the motel room to commit a crime therein, and was therefore, [e]ntitled to direct[ed] verdict of the charges.

Ground Two Argument (A)

Supporting facts

At my second trial, (case # 2), w[h]ere Norman Coleman testified that on September 20, 2000, he left his home to go to work at 3:45 a.m. Coleman stopped at a local convenience store to purchase a newspaper. Coleman then heard a voice say hold it, this is s stick up. He turned around to find a young black male with a handgun demanding his money. Coleman gave the man about one hundred dollar[s]. He claims the area was well-lit and that he looked at the man for ten to fifteen seconds. According to Coleman, he was only a few inches away from the man. Specifically, Coleman testified that all he could look at was the barrel of the handgun. Thereafter, the man got into Coleman's car and dr[o]ve away.

Coleman immediately called police. He described the height of his assailant as between 5'8" and R 5'10". He estimated the assailant was between the ages of twenty-two and thirty. However while testifying, Coleman stated the man was in his thirties. Coleman described the man as wearing blue pants, a white shirt, and a cap turned backwards. When asked if the man had a "beard or anything," Coleman initially responded in the negative, but went on to explain "I wouldn't say it was a beard but facial hair is facial hair. It was like they were trying to grow a beard." Coleman admitted that he was concerned only with the gun and was not looking at the man in order to give a description. However, Keith Glover of the Aiken Department of Public Safety testified that I was 6'1" and 6'2" in height and in my twenties. After the police officers arrived, Coleman went with the officers and identified his car at a different location. Several day s later, Colman met with police officers for a photographic lineup. Although he observed four line-ups, he was unable to identify anyone. Approximately four

months later, Coleman went back to the police department to view another lineup. Four months after my face was in the newspaper and on the News. I was identified in a photographic line up where I was the only person in my prison clothes and everybody else was in their street clothes. Coleman selected a photograph of me from this lineup. Thereafter, Coleman identified me in the courtroom.

Additionally, Coleman identified a handgun in evidence as being similar to the one used on the night that he was robbed. An officer testified that I admitted to being in possession of a handgun in evidence prior to the date of the alleged robbery.

Officers found a shoe print impression near the burned car. An expert testified that the cast of the footwear impression found at the scene and shoes recovered from me were consistent. The expert could not say anything more than that both were consistent because there was a lack of random identifying characteristics. On cross-examination, the expert admitted that the shoe size was fairly common. Further, he admitted that the out-sole pattern, parallel lines running down the show, was a relatively simple design. I testified in my own defense. I denied ever pointing a gun at Coleman, denied ever asking Coleman for money, and denied ever taking Coleman's car. On cross-examination, I testified that I frequented the store where the alleged robbery took place because my girlfriend and cousin lived nearby. I admitted owning a handgun. I stated my face was clean shaven in September of 2000, as I usually keep it.

According to the PCR order, trial counsel testified that I "never said anything to him about looking into a video tape" and that because I was "arrested five or six months after the incident" the "store probably would not still have the video of there ever was a video.[""]

***

The duty to investigate is upon trial counsel, not the defendant. Trial counsel unreasonably and improperly addicated his duty to investigate to me, as evidenced by his testimony before the PCR court. Inquiring into the existence of a video at a convenience store is a matter of common sense, which should not require a specific request by me. Trial

counsel's failure to inquire as to a video constituted deficient performance. Counsel's deficiency prejudiced me in light of the state's weak case against me. The only direct evidence against me was Coleman's identification of me. Coleman's identification suffered from multiple weaknesses, including his admitted focus on the weapon in front of him as opposed to the actual assailant and the fact that his description of the assailant, given moments after the alleged armed robbery could not match my physical features. The circumstantial evidence relied upon by the prosecution was extremely weak. The expert witness who testified concerning the cast of the shoe print impression found near the stolen car could say only that the impression was consistent with issues owned by myself. The expert was forced to admit that the impression could have been mad[e] by many shoes and was not limited to these owned by myself as there were no unique identifying characteristics.

[*Id.* at 17–27 (some alterations in original) (emphasis in original) (citations omitted).] As stated, on January 14, 2015, Respondent filed a motion for summary judgment. [Doc. 18.] On March 27, 2015, Petitioner filed a response in opposition. [Doc. 27.] On April 9, 2015, Respondent filed a reply. [Doc. 31.] Petitioner filed an additional response in opposition to the motion for summary judgment on May 21, 2015. [Doc. 38.] Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary

dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must

21

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

> ### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

#### Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)      (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)      (I) there is an absence of available State corrective process; or
> >
> >          (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[10] Further, strict time deadlines govern direct appeal and the filing

_____

[10]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant

of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme

to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However,

28

if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse

a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must

demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

### *Statute of Limitations*

Under the AEDPA, petitioners have one year to file a petition for writ of habeas

corpus.  28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D).  However, the statute tolls the limitations period during the time "a

properly filed application for State post-conviction or other collateral review with respect to

the pertinent judgment or claim is pending."  *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the

application is untimely under state law.  *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005)

("When a post conviction petition is untimely under state law, 'that [is] the end of the matter'

for purposes of § 2244(d)(2)." (alteration in original)).  In *Pace*, the United States Supreme

Court held that time limits on filing applications for post-conviction or collateral review are

filing conditions, no matter the form of the time limit. *Id.* at 417. Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court has recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418). Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied. *Id.* at 2563.

## DISCUSSION

**Expiration of Limitations Period**

Respondent argues the Petition is time barred. [Doc. 17.] Upon review, the Court agrees.

The South Carolina Court of Appeals dismissed Petitioner's direct appeal for his First Set of Convictions by order filed June 24, 2003 [App. 614–15], and Petitioner did not seek further review. The South Carolina Court of Appeals dismissed Petitioner's direct appeal for his Second Set of Convictions by order filed June 17, 2003 [App. 627–28], and Petitioner did not seek further review. Consequently, Petitioner had one year from July 10, 2003, fifteen days after the South Carolina Court of Appeals' order of dismissal was filed, to file a federal habeas petition with respect to his First Set of Convictions and one year from July 3, 2003, fifteen days after the South Carolina Court of Appeals' order of dismissal was filed, to file a federal habeas petition with respect to his Second Set of Convictions. 28 U.S.C. § 2244(d)(1); *Gonzalez v. Thaler*, --- U.S. ---, ---, 132 S. Ct. 641, 653–54 (2012)

(holding that a judgment becomes final for purposes of § 2244(d)(1) "when the time for pursuing direct review in [the United States Supreme] Court, or in state court, expires"); S.C. App. Ct. R. 221(a), 242(c) (establishing that a decision of the South Carolina Court of Appeals is not final for purposes of petitioning the Supreme Court of South Carolina for review until the petitioner has filed a motion for rehearing by the Court of Appeals, and such motion must be filed within fifteen days of the Court of Appeals' decision).

Here, Petitioner filed his first PCR application, which challenged both sets of convictions, on April 15, 2004, such that 280 days of the one-year limitations period had expired with respect to his First Set of Convictions and 287 days of the one-year limitations period had expired with respect to his Second Set of Convictions before Petitioner filed his PCR application.  The one-year period in which to file a federal habeas petition is tolled during the pendency of a PCR application or other collateral relief properly filed in state court, 28 U.S.C. § 2244(d)(2), and the statute of limitations was tolled during the period the PCR application was pending—from April 15, 2004 until October 14, 2009, the date after which Petitioner could not appeal the order of dismissal in his first and second PCR actions, which were merged.  *See* S.C. App. Ct. R. 203(b)(1) ("*Appeals From the Court of Common Pleas.*  A notice of appeal shall be served on all respondents within thirty (30) days after receipt of written notice of entry of the order or judgment."); App. 680 (PCR court's order of dismissal filed September 14, 2009).  Therefore, the one-year limitations period began to run again on October 15, 2009 and expired 85 days later on January 8, 2010, with

respect to his First Set of Convictions, and 78 days later on January 4, 2010,[11] with respect to his Second Set of Convictions.

Petitioner filed a third PCR application on September 9, 2010. [App. 691–97.] However, the action did not toll the one-year limitations period because it was filed after the expiration of the one-year limitations period under § 2244(d)(1)(A).  To toll the one-year statute of limitations period governing federal habeas petitioner, state PCR proceedings must commence prior to the expiration of the federal statutory period.  *See* 28 U.S.C. § 2244(d).  Further, the application was dismissed and denied as successive and untimely. Thus, Petitioner's PCR application did not toll or revive the already expired statute of limitations for filing his federal habeas petition.

Additionally, the South Carolina Court of Appeals' grant of a belated appeal pursuant to *Austin* from Petitioner's first and second PCR actions does not entitle Petitioner to toll the time between his PCR actions.  *See McHoney v. State of S.C.*, 518 F.Supp.2d 700, 705 (D.S.C. Aug. 14, 2007) (finding that no collateral action was "pending," as defined by the AEDPA, during the time between the state court's initial denial of the PCR application and the state court's allowance of a belated appeal of that PCR application and thus the AEDPA's limitations period was not tolled during this time); *Hepburn v. Eagleton*, C/A No. 6:11-cv-2016-RMG, 2012 WL 4051126, at *3 (D.S.C. Sept.13, 2012) (holding the same);

---

[11]Pursuant to Rule 263(a) of the South Carolina Appellate Court Rules, when calculating time, the last day of the period is to be included "unless it is a Saturday, Sunday or a state or federal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor such holiday."  Here, the statute of limitations with respect to Petitioner's Second Set of Convictions expired on Saturday, January 2, 2010.  Accordingly, the Court will treat the statute of limitations period as ending on Monday, January 4, 2010.

*see also Evans v. Chavis*, 546 U.S. 189, 192 (2006) ("[T]he time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law.") (emphasis in original); *Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) ("The statutory tolling provision does not encompass a period of time in which a state prisoner does not have a 'properly filed' post-conviction application actually pending in state court.").

As a result, the Petition—filed on September 15, 2014, nearly four years after the expiration of the limitations period—is time barred.

**Equitable Tolling**

Petitioner argues he is entitled to equitable tolling because his institution was on lock-down for three weeks [Doc. 27 at 2], the statute of limitations was tolled by a previously filed federal habeas action[12] [Doc. 27 at 1], and his delay in filing was caused by his belated PCR appeal [Docs. 27 at 2; 37 at 1; 38 at 1–3]. For the reasons explained below, Petitioner is not entitled to equitable tolling.

As the United States Supreme Court has recognized:

> Under our system of representative litigation, "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R. Co.*, 370 U.S. 626, 634, 82 S. Ct. 1386, 1390, 8 L. Ed.2d 734 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L. Ed. 955 (1880)). . . . Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations

---

[12]Petitioner's previously filed federal habeas action was dismissed without prejudice because Petitioner had not exhausted his state court remedies. [C/A No. 2:10-cv-00161-HFF-RSC, Docket Entry Number 11.]

33

> where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S. Ct. 1723, 1725, 80 L. Ed.2d 196 (1984).

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92, 96 (1990) (footnotes omitted). The Fourth Circuit Court of Appeals has underscored the very limited circumstances in cases subject to the AEDPA where equitable tolling will be permitted, holding a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).[13]   The Supreme Court has suggested that equitable tolling is justified to relieve the operation of a limitations bar due to egregious unprofessional attorney misconduct, such as abandoning the client; a last minute change in representation beyond the client's control; failing to conduct essential services of representation like communicating with the client and performing basic legal research; and denying the client access to files and misleading the client.  *Holland*, 130 S. Ct. at 2564 (citations omitted).  Further, as previously stated, the Supreme Court has held that, in addition to demonstrating extraordinary circumstances prevented the petitioner from timely filing, the petitioner must demonstrate he has been diligently pursuing his rights.  *Id.* at 2562.

Here, Petitioner has failed to demonstrate that extraordinary circumstances beyond his control or external to his own conduct prevented him from filing his Petition within the statute of limitations.  Petitioner argues he was unable to timely file his Petition because his institution was on lockdown and he was without access to legal materials.  As an initial matter, the fact that Petitioner's institution was on lockdown for three weeks does not

---

[13]Other courts of appeals have similarly expressed that equitable tolling of the AEDPA statute of limitations is to be employed sparingly.  *See, e.g.*, *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) (applying the general rule that "'attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary" circumstances required for equitable tolling'" (citation omitted)); *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002) ("Ineffective assistance of counsel generally does not warrant equitable tolling."); *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002) ( "[C]ounsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [the petitioner's] habeas petition in the district court within the one-year limitations period."); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999) (refusing to apply equitable tolling where late filing was caused by attorney's use of ordinary mail to send petition from Atlanta to Miami less than a week before it was due); *see also Rouse*, 339 F.3d at 246 ("Principles of equitable tolling do not extend to garden variety claims of excusable neglect." (citation omitted)).

explain why his Petition was filed four years late. Additionally, Petitioner's bare allegations of denial of access to legal materials are not sufficient, standing alone, to entitle him to equitable tolling. Instead, a petitioner must present evidence regarding the steps he took to diligently pursue his remedies during the time that he was allegedly deprived of access to legal materials. *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007) (holding that the absence of an adequate law library does not justify equitable tolling); *see also Cross-Bey v. Gammon*, 322 F.3d 1012, 1015–16 (8th Cir. 2003) (rejecting equitable tolling where a petitioner alleged lack of legal knowledge and legal resources). Moreover, Petitioner's claim that his previously filed habeas action tolled the statute of limitations also fails. *See Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (holding that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2). Section 2244(d)(2) therefore d[oes] not toll the limitation period during the pendency of [the petitioner's] first federal habeas petition.").

Petitioner's third argument—that he was not aware of the denial of his first and second PCR actions—also fails to equitably toll the statute of limitations. Petitioner's habeas action would be untimely even if the Court were to agree that Petitioner did not know his first and second PCR actions had been denied until he received the response from the clerk's office, filed December 8, 2009 [Doc. 27-1 at 4]. Petitioner does not state when he received this letter from the clerk's office. [*See* Docs. 27, 37, 38.] However, Petitioner clearly knew that his first and second PCR applications had been dismissed and denied by the time he filed his third PCR action on September 9, 2010, alleging his PCR counsel was ineffective for failing to appeal the denial of his first and second PCR

36

applications [App. 691–97].    Even if the Court were to assume the statute of limitations

was tolled from April 15, 2004 until October 11, 2010, the date after which Petitioner could

not appeal the order of dismissal in his first and second PCR actions, *see* S.C. App. Ct. R.

203(b)(1) ("A notice of appeal shall be served on all respondents within thirty (30) days

after receipt of written notice of entry of the order or judgment."),[14] Petitioner would have

had until January 4, 2011, with respect to his First Set of Convictions, and December 28,

2010, with respect to his Second Set of Convictions, to file his Petition.  However, Petitioner

did not file his Petition until September 15, 2014.  [Doc. 1.]  Accordingly, Petitioner has

failed to provide any grounds for equitably tolling the federal statute of limitations.

Therefore, the Petition should be dismissed as time barred.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's

motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin
United States Magistrate Judge

July 23, 2015
Greenville, South Carolina

---

[14]As discussed, supra, pursuant to Rule 263(a) of the South Carolina Appellate Court Rules, when calculating time, the last day of the period is to be included "unless it is a Saturday, Sunday or a state or federal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor such holiday."  Here, the 30-day time period for Petitioner to file his notice of appeal expired on Sunday, October 10, 2010.  Accordingly, the Court will treat the time in which Petitioner was to file his notice of appeal as ending on Monday, October 11, 2010.